UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HOUSTON CASUALTY COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-3367** |
| **SUPREME TOWING COMPANY, INC.** | **SECTION: "H" (4)** |

## ORDER

Before the Court is Plaintiff, Houston Casualty Company ("HCC")'s **Second Motion for Protective Order to Quash Subpoena and Notice of Deposition to R. Jeffrey Bridger ( R. Doc. 193)**, seeking to quash the deposition of Jeffrey Bridger ("Bridger"). The motion is opposed. (R. Doc. 206). The motion is noticed for submission on August 29, 2102.

I. **Background**

This action was filed in response to a liability finding in a related limitation matter *In Re: Supreme Towing Co., Inc. As Owner and Operator of the M/V CAPT. BRENNAN,* Civil Action No. 2:07-cv-09231-JCZ-KWR. Houston Casualty Company, had a policy of insurance which provided coverage to the insurer of Supreme Towing under a policy of insurance, Policy No. CUL 15010.126 (the "HCC Policy") with effective dates of December 20, 2006 to December 20, 2007.[1]

---

[1] The limitation proceeding was filed on November 30, 2007. Prior to the filing of the limitation action, HCC issued a reservation of rights and non-waiver letter to Supreme for its failure to comply with Coast Guard regulations regarding the navigation of the M/V Capt. Brennan. In the reservation of rights letter, HCC reserved its right to decline coverage for Stone's claims based on Supreme's failure to comply with the terms, conditions, warranties, and exclusions of the policy. HCC however agreed to fund Stone's defense of the lawsuit.

In the limitation action, the District Judge conducted a trial during which Stone argued that the loss was caused by Supreme Towing's fault because of its failure to properly provide its vessel with current charts and Local Notices to Mariners, which would have identified the location of the platform. After listening to all the testimony and reviewing the evidence the District Judge, on August 12, 2010, held that the CAPT. BRENNAN and its tow, Barge SCI-25 allided with Well #14 on July 28, 2007 and that Supreme Towing was liable to Stone Energy under the OPA and general maritime law for its damages resulting from that allision.[2] The Court further found that Supreme Towing was not entitled to limit its liability under the OPA or the Limitation Act. (07-09231-JCZ-KWR, Doc. 169, 8/12/10.)

After the trial which resolved liability, the claims between Supreme and Stone settled. Stone and Supreme reserved their rights to proceed in the subject action filed by HCC. Further, Supreme assigned its rights and claims under the policy to Stone Energy Offshore.

In the meantime and consistent with its reservation of rights letter, HCC renewed its reservation of rights and the non waiver of its right to decline coverage for Supreme's defense and indemnity. Thereafter, on October 6, 2010, HCC filed this Declaratory Judgment Action pursuant to Federal Rule of Civil Procedure ("Rule") 57 and 28 U.S.C. § 2201, et. seq., and contends that it does not owe any marine insurance coverage to its insured Supreme Towing, for its liability to Stone for damaging Stone's unmanned oil well. Specifically, HCC suggests that the holding in the related matter precluded coverage under its policy based upon the specific policy terms and conditions.

In contrast to HCC's position, Supreme Towing contends that the policy does not exclude coverage under the circumstances of the case. It contends that the reservation of rights letters sent

---

[2] A bench trial was conducted on liability on March 30, 2010, March 31, 2010, April 1, 2010, April 5, 2010, April 6, 2010, April 7, 2010, and completed on April 8, 2010.

2

by HCC to Supreme Towing on behalf of HCC are not sufficiently specific to reserve rights as to the breach of the USCG navigation regulation found by the District Judge and that the HCC policy in fact does not provide coverage for any at fault allision or collision.[3] Stone as the assignee of Supreme seeks to prove that HCC owed coverage to its insured and that it failed to properly reserve its rights to deny coverage under the policy such that it is now estopped from asserting coverage as a defense.

In its effort to develop evidence to support its position, on July 31, 2012, Stone noticed the deposition of R. Jeffrey Bridger ("Bridger"), an attorney with Larzelere, Picou, Weiss, Simpson, Lonero, LLC who represented HCC in the subject matter. Stone seeks to depose Bridger regarding his involvement in the drafting of the reservation of rights letter and other communications between he and Greg Ernst ("Ernst"), the attorney HCC hired to represent Supreme Towing in the underlying Limitation Action.

In response to the notice seeking to depose its attorney, HCC filed the subject motion seeking to quash the subpoena and notice of deposition issued to Bridger, its former attorney.[4] HCC contends however that all privileges that attached during his representation of HCC remain intact such that permitting his deposition would be improper and inevitably address privileged, confidential client information and communications, information protected by the work product doctrine and the common interest privilege. HCC further contends that obtaining the deposition of Bridger would be the equivalent of taking the undersigned attorney's deposition.

---

[3] Supreme Towing Company, Inc.'s Answer to Complaint for Declaratory Judgment and Countercalim (R. Doc. 7 ¶ 10) ("HCC never . . . reserved its rights as to failure, alleged or otherwise, to comply with U.S. Coast Guard regulations regarding navigation of the M/V CAPT. BRENNAN.").

[4] Bridger no longer is counsel of record for HCC in this matter as he is no longer employed with Larzelere, Picou Wells Simpson Lonero, LLC; however, the firm continues to represent HCC in this matter. (R. Doc. 193, p. 2).

Finally, HCC contends that Stone has (1) failed to demonstrate that there exists no other means by which it can obtain the information; (2) that the information sought is relevant and non-privileged; and (3) that the information is crucial to preparing the case. *See Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) test and adopted by the Fifth Circuit in *Nguyen v. Excel Corp.*, F.3d 200, 208-09 (5th Cir. 1999).

By contrast, Stone contends that it seeks to depose Bridger about the reservation of rights he authored, which is heavily relied upon by HCC in support of its position that it does not owe any coverage in this matter. *See* Executed Copy of November 2007 Letter (R. Doc. 1-2 pp. 144-53) Stone submits further that it seeks to depose Bridger about his communications, with Supreme's liability counsel, Ernst. Stone contends that there is no common-interest privilege between coverage counsel, Bridger and liability counsel for Supreme, Ernst, because HCC has placed the sufficiency of the reservation letter in issue by this very lawsuit and further that HCC thereby waived its right to assert an privileges by selectively using portions of Bridger's privileged communications including the subject reservations letter. (R. Doc. 206)

## II. Standard of Review

### A. Scope of Discovery

Federal Rule of Civil Procedure "Rule") 26(b)(1) provides that "parties may obtain discovery regarding any matter, not privileged that is relevant to the claim or defense of any party . . . ." Further, discovery may be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

expense of the proposed discovery outweighs its likely benefit . . . ." Rule 26(b)(2).

The discovery rules are accorded a broad and liberal treatment to affect their purpose of adequately informing litigants in civil trials. *Hebert v Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries," *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)), and "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Courts have recognized that while it is true that relevance in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Zenith Electronics Corp. v Exzec, Inc.,* 1998 WL 9181, at *2 (N.D. Ill Jan. 5, 1998) (*quoting Piacenti v. Gen. Motors Corp.*, 173 F.R.D. 221, 223 (N.D. Ill.1997)). Further, the information must be "reasonably calculated to lead to the discovery of admissible evidence." *Id.* (*quoting National Paint & Coatings Ass'n v. City of Chicago*, 147 F.R.D. 184, 185 (N.D. Ill. 1993)). Courts have also recognized that "the legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." *Id.* Therefore, discovery methods shall be limited by the Court if it determines that the discovery sought is unreasonably cumulative or duplicative. Rule 26(b)(2)(i).

### B. Burdens Imposed by Federal Rule of Civil Procedure 26(c)

The decision to enter a protective order is within the court's discretion. *Thomas v Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995). Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that "the burden is upon the movant to show

the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *See In re: Terra International, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (citing *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Under Rule 26(c), the party seeking the protective order must show good cause by demonstrating a particular need for protection. For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted. *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. *Cippollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). Further, if a blanket stipulated protective order is entered by the Court, pursuant to Rule 26(c), such order can be inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document. *Id.*

### C. **Motion to Quash**

The discovery rules are accorded a broad and liberal treatment to affect their purpose of adequately informing litigants in civil trials. *Hebert v Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries," *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)), and "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

**III. Analysis**

HCC contends that Stone is unable to demonstrate the three-part standard set forth in *Shelton* that the information is not available from any other source, that it is relevant and non privileged and that the information is crucial. Further, HCC contends that Louisiana Rules of Professional Conduct, particularly rule 1.9(c)(2) and Comment 18 to the ABA Rule 1.6 regarding confidentiality, the deposition of Bridger would be wholly inappropriate. HCC states that because Bridger formerly represented a client in this matter, he "shall not" thereafter reveal information relating to the representation except as the Rules would permit or require with respect to a client.

HCC contends that contrary to the requirements of *Shelton*, the information sought from its coverage counsel is available from other sources namely litigation counsel for Supreme, Ernst. HCC points out that it obtain an Unsworn Declaration from Ernst after Stone had previously sought to depose Ernst on this issue noting that Ernst's deposition was quashed "to avoid various privilege issues" attendant to his deposition. HCC therefore contends that because Stone received the Ernst declaration, it is not entitled to depose Bridger.

Stone in response contends that HCC cannot use the assertion of privilege as a sword and shield. Stone contends that on the one hand, HCC contends that Bridger and Ernst's should not be subject to deposition because they were lawyers retained by it to assist with its coverage and the liability defense of its insured Supreme and yet, on July 9, 2012 HCC listed both Bridger and Ernst as potential witnesses in the trial of this action on its witness list. (R. Doc. 163) Stone contends that it was only after HCC chose to strategically list its coverage counsel as a may call witness that it decided to depose him to acquire information on what he would testify to on behalf of HCC regarding the reservation of rights issue, the central issue in this action. Therefore, Stone contends

that HCC cannot use the testimony of Mr. Bridger as a sword (offensively) and a shield(defensively).

### A. Deposition of Bridger-Reservation of Rights Letter

The issue of the existence of the attorney client relationship between HCC and Bridger is not questioned here; rather, the dispute concerns whether the privilege exists in the instances invoked by the plaintiff and whether there has been a partial waiver either by disclosure or by placing the subject matter in issue. As to the former, it is axiomatic that the attorney-client privilege "only protects disclosure of confidential communications between the client and his attorney; it does not protect underlying facts." *Edwards,* 39 F. Supp. 2d at 723; *see also Boyd v. St. Paul Fire & Marine Insurance Co.*, 775 So.2d 649, 655 (La.App. 3d Cir. 2000).

If the privilege is used offensively against divulging information for the holder's benefit, the privilege is deemed to have been waived. *Am Med. Systems, Inc. v. National Unite Fire Ins.*, No. 98-01788, 1999 WL 970341, at *1 (E.D. La. Oct 22, 1999); *Nguyen*, 197 F.3d at 208 n.18; *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 125 (2d Cir. 2006) (reasoning that a party cannot submit and rely upon its own privileged information to obtain a desired ruling and simultaneously seek to prevent the disclosure of that information based on attorney-client privilege). The attorney-client privilege is meant to be used defensively as a shield against divulging privileged information, rather than offensively as a sword. *Am Med. Systems, Inc.,* 1999 WL 970341, at *1; *see also U.S. v. Moody*, 923 F.2d 341, 352 (5th Cir. 1991) (noting that attorney-client privilege is to be used defensively as a "shield," and not as an independent means of attack as a "sword," and to use it as a sword is to abandon the ability to use it as a shield).

Nevertheless, a party does not waive its attorney-client privilege based on a mere inquiry

"into the general nature of the legal services provided by counsel . . . because the general nature of services is not protected by the privilege." *Nguyen*, 197 F.3d at 206. However, inquiries "into the *substance* of the client's and attorney's discussions does implicate the privilege." *Id*. (emphasis added).

HCC generally contends that Bridger's communications with it are obviously protected. It does not address the issue raised by Stone that it also identified Bridger as a may call witness on its witness list. Further HCC does not address the availability of information regarding the sufficiency of the reservation rights letter from other sources, a consideration set forth in *Shelton*.

The record reflects that HCC on July 9, 2012 listed Bridger as a may call witness at the upcoming trial. However, the listing specifically limits the scope of the testimony that would be sought from him namely, his communications with Ernst. (R. Doc. 164)

The Court notes however that Stone fails in its attempt to secure the deposition of Bridger regarding the reservation of rights letter. While it contends that Bridger testimony is being used as a sword and shield, there is no evidence in the record to support the suggestion as it relates to the drafting of the November 8, 2007 letter. The attorney client privilege and work product doctrine apply to this set of facts. As a result, the Court finds that the motion for protective order and/or to quash the deposition of Bridger is granted only in so far as Stone sought to question him about his legal opinion rendered in the reservation of rights letter/letters which Stone already has in its possession.

    B.    **Communications between coverage counsel (Bridger) and liability counsel (Ernst)**

Second, the Court must consider whether the communications between Ernst and Bridger are privileged. It is important to note that Bridger was coverage counsel for HCC and Ernst was

9

retained by HCC to defend Supreme the insured of HCC. HCC suggests but fails to brief the issue that its coverage counsel and the liability counsel retained to defend its insured communications were protected because of the common interest doctrine.

The common interest privilege is neither common nor a privilege. Instead, it is an extension of the attorney-client privilege and of the work-product doctrine. *See In re LTV Secs. Litig*., 89 F.R.D. 595, 604 (N.D.Tex.1981) (noting that the common interest doctrine "extends the attorney-client privilege to communications made in the course of joint defense activities"); *see also Power Mosfet Techs. v. Siemens AG*, 206 F.R.D. 422, 424 (E.D.Tex.2000) (stating that the common interest doctrine applies to the work-product doctrine). Generally, when an attorney divulges privileged information to a third party, attorney-client and work-product protection cease to exist. *See United States v. Pipkins,* 528 F.2d 559, 563 (5th Cir.1976).

The common interest doctrine, however, "extends a recognized privilege, commonly the attorney-client or work product privileges, to cover those communications." *Siemens AG,* 206 F.R.D. at 424. Consequently, the common interest doctrine is "an exception to the general rule that the attorney-client privilege is waived upon disclosure of privileged information with a third party." *Katz v. AT & T Corp.,* 191 F.R.D. 433, 436 (E.D.Pa.2000) (citations omitted). This exception also applies to the work-product doctrine. *Siemens* AG, 206 F.R.D. at 424.

The common interest doctrine protects communications between two parties or attorneys that share a common legal interest. *See Hodges, Grant & Kaufmann v. United States Department of the Treasury*, 768 F.2d 719, 721 (5th Cir. 1985); *Aiken*, 151 F.R.D. at 623. The common interest doctrine applies to cases involving co-defendants, an insurer and an insured, and a patentee and a licensee. *See In re LTV Secs. Litig*., 89 F.R.D. at 604; *see also United States v. Masachusetts. Inst.*

*of Tech.*, 129 F.3d 681, 685 & n.4 (1st Cir.1997) (collecting cases). Furthermore, the common interest doctrine protects communications made when a nonparty sharing the client's interests is present at a confidential communication between attorney and client. *See United States v. Zolin*, 809 F.2d 1411, 1417 (9th Cir.1987), *overruled on other grounds by United States v. Jose*, 131 F.3d 1325 (9th Cir.1997).

In this case, there was clearly no common interest between Bridger and Ernst. The only thing that these attorneys had in common was that they were both retained by HCC. However, Bridger was retained by HCC to provide an opinion to HCC on whether the policy provided coverage or whether the actions of the insured voided coverage pursuant to an exclusion in the policy.

By contrast Ernst was retained by HCC to provide a defense on the main claim in the limitation action for Supreme, the real client in interest. Clearly, Ernst should not have communicated with coverage counsel about the substantive evidence he received regarding his client Supreme Towing's actions because the sharing of that information could result in harm to his real client, Supreme. Having determined that the common interest doctrine does not apply and further that the real party in interest for Ernst was Supreme, the attorney client privilege does not apply and further the *Shelton* case is not applicable under this set of facts.

Further, as noted above, HCC conveniently listed Bridger as a witness to testify about his communications with Ernst but seeks to prevent his deposition on this limited basis. The Court finds that in this instance, HCC is attempting to use the testimony of Bridger as both a sword and a shield which is not permissible. As such, Bridger, coverage counsel, shall be produced for deposition on the limited bases of testifying about his communications with Ernst, litigation counsel post-haste.

Accordingly,

**IT IS ORDERED** that Plaintiff, Houston Casualty Company's **Second Motion for Protective Order to Quash Subpoena and Notice of Deposition to R. Jeffrey Bridger (R. Doc. 193)** is hereby **GRANTED in PART and DENIED IN PART**.

**IT IS GRANTED** to the extent that Stone Offshore Energy, L.L.C. seeks to depose R. Jeffrey Bridger about the November 9, 2007 reservation of rights letter. The parties are precluded for questioning Bridger regarding his drafting of reservation letters on behalf of HCC.

**IT IS DENIED** to the extent that Stone Offshore Energy, L.L.C. seeks to depose R. Jeffrey Bridger, coverage counsel, regarding his communications with liability/defense counsel, Ernst.

New Orleans, Louisiana, this 4th day of September 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**