UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HOUSTON CASUALTY COMPANY,<br>    Plaintiff | CIVIL ACTION |
| VERSUS | No. 10-3367 |
| SUPREME TOWING CO., INC.,<br>    Defendant | SECTION "E" |

**ORDER AND REASONS**

Before the Court are three motions for summary judgment: (1) plaintiff Houston Casualty Company's ("HCC") "Motion for Summary Judgment on Insurance Coverage;"[1] (2) HCC's "Second Motion for Summary Judgment;"[2] and (3) intervenor Stone Energy Offshore, LLC's ("Stone") "Motion for Summary Judgment on Insurance Coverage."[3] Also before the Court is HCC's "Motion to Strike Pre-Trial Memorandum on Behalf of Stone Energy Offshore, LLC Regarding Standing Issues."[4] For the reasons set forth below, all three motions for summary judgment are denied. The motion to strike is also denied.

**BACKGROUND**

This Declaratory Judgment action, filed by HCC pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201, *et seq.*, arises out of HCC's claim that it does not owe marine insurance coverage to the defendant, Supreme Towing Company, Inc. ("Supreme"), for its liability as a result of an allision between an oil well and Supreme's vessel the M/V

---

[1] R. Doc. 81.

[2] R. Doc. 173.

[3] R. Doc. 181.

[4] R. Doc. 240.

CAPTAIN BRENNAN ("the vessel").[5]  The allision, which occurred on or about July 28, 2007, saw the vessel strike Main Pass Well #14, an unmanned oil well in the Gulf of Mexico owned by Bois D'Arc Offshore ("BD").

## THE LIMITATION ACTION

Supreme, as the named insured under a policy issued by HCC, made a claim for defense and indemnity as a result of the claim asserted by BD.[6]  On November 30, 2007, Supreme initiated an action in this Court, praying for exoneration from or a limitation of its liability as a result of the allision (hereinafter referred to as the "Limitation Action").[7] The Limitation Action was bifurcated for trial into a liability phase and damages phase. After a seven day bench trial on the liability phase of the Limitation Action, Judge Jay Zainey found on August 12, 2010 that Supreme was solely liable for the allision.[8]  In his Findings of Fact and Conclusions of Law, Judge Zainey held that Supreme's failure to comply with Coast Guard navigational regulations and its failure to equip the vessel with up to date navigational charts, electronic navigational charts, data, and notices to mariners was the proximate cause of the allision.[9]  Judge Zainey also held that Supreme's "utter failure to implement or manage a safety program" contributed to Supreme's violations of

---

[5] *See* R. Doc. 1.

[6] Supreme is the named insured under Policy No. CUL 15010.126 from HCC with effective dates of December 20, 2006 through December 20, 2007.  *See* R. Doc. 81-4.  There is no dispute that this policy was in place at the time of the allision.  On August 28, 2008, Stone acquired BD and became the real party in interest in the Limitation Action.  *See* R. Doc. 40 in the Limitation Action.

[7] *See In Re: Supreme Towing Co., Inc. as owner and operator of the M/V CAPT. BRENNAN*, Civil Action No. 2:07–cv–09231.

[8] *See* R. Doc. 169 in the Limitation Action.

[9] *See id.* at p. 45.

the Coast Guard regulations, and that these deficiencies in Supreme's safety program constituted gross negligence.[10] After the liability phase, the parties settled the issue of damages in the Limitation Action.

## THE DECLARATORY JUDGMENT ACTION

After Judge Zainey found Supreme solely liable for the allision, HCC filed the instant Declaratory Judgment action on October 6, 2010.[11] HCC claims that the Coast Guard Provisions in Policy No. CUL 15010.126[12] serve to relieve HCC of its obligation to pay Stone, on behalf of Supreme, a sum of money under the insurance policy. Supreme Towing answered the declaratory judgment action asserting defenses including waiver and estoppel and stating a counterclaim against HCC.[13] Stone intervened in the Declaratory Judgment action alleging it is entitled to recover the funds in priority to any recovery by Stone.[14] While many of the facts involving the allision are no longer in dispute after the Limitation

---

[10] *See id.* at p. 45, 49.

[11] R. Doc. 1.

[12] Policy No. CUL 15010.126 contained the following provisions, referred to throughout this Order as the "Coast Guard Provisions":

"GENERAL CONDITIONS APPLICABLE TO ALL SECTIONS OF THIS POLICY:

Warranted the vessel(s) insured hereunder to comply with all applicable United States Coast Guard regulations pertaining to the trade and/or type of vessel insured herein.

***

U.S. COAST GUARD
It is agreed that the Assured fully comply with U.S. Coast Guard regulations with respect to manning and navigation requirements.

*See* R. Doc. 81-4 at pp. 6-7.

[13] R. Doc. 7.

[14] R. Doc. 12.

Action, many facts remain in dispute with respect to this Declaratory Judgment Action. Indeed, the most recent Amendment to Pretrial Order submitted to the Court by Stone and HCC lists sixty-one contested issues of material fact.[15]

Continental Underwriters and Covenant Claims Service ("CUL"), on behalf of HCC, issued Policy No. CUL-15010.126 to Supreme in December 2006.[16] Before issuing the policy, a safety audit of Supreme was conducted by Safety & Training Consultants in April 2004,[17] another safety audit of Supreme was conducted by CAP Marine, LLC ("CAP") in April 2006,[18] and a "Condition and Valuation Survey" of the vessel was also conducted by CAP in April 2006.[19] CAP also conducted yet another safety audit of Supreme in May 2007.[20]

On July 28, 2007, Supreme's vessel was involved in an allision. HCC claims that the first notice it received of the allision was on August 1, 2007, when Supreme's insurance broker, the Marcello Agency, and HCC's adjuster, Michael Shreve ("Shreve"), contacted HCC to request assistance. In an email, Shreve requested that HCC provide an attorney to be present for a Coast Guard interview with Captain Godfrey Barrois ("Captain Barrois"),

---

[15] *See* R. Doc. 226 ("Amendment to Pretrial Order"). The first proposed Joint Pretrial Order contained eleven uncontested issues of material fact and seventy-nine contested issues of fact. R. Doc. 217. At the August 23, 2012 pretrial conference, the Court instructed the parties to confer and submit to the Court a revised list of issues of contested and uncontested issues of fact. *See* R. Doc. 221 (Minute Entry from August 23, 2012 Pretrial Conference). Sixty-one contested issues of fact apparently still remain.

[16] It is undisputed that HCC owned CUL, the issuer of the policy, at the time of the allision. It is also undisputed that Fidelis Holdings bought CUL in 2009.

[17] R. Doc. 226 at p. 1.

[18] R. Doc. 181, Ex. 6.

[19] R. Doc. 181, Ex. 9.

[20] R. Doc. 181, Ex. 11.

the captain of the vessel at the time of the allision.[21] On August 27, 2007, Shreve, on behalf of HCC, sent an email to the Marcello Agency and attorney Gregory Ernst ("Ernst") confirming that the law firm of Peuler & Ernst had been retained to handle Supreme's case, and that HCC's underwriters were working on the case "under a preliminary reservation of all rights and defenses under the policy, at law or otherwise."[22] HCC claims that the email on August 27, 2007 fully reserved its rights to deny coverage. Stone disagrees.

On November 8, 2007, HCC issued a "reservation of rights" letter to Supreme.[23] In this letter, HCC purports to reserve all rights to decline coverage for Stone's claims based on Supreme's failure to comply with the terms, conditions, warranties, and exclusions of the policy, while also agreeing to fund Stone's defense of the Limitation Action. It is undisputed that this November 8, 2007 letter mentions the Coast Guard Provisions, along with several other provisions in the policy. Stone claims that this letter did not include sufficient detail or explanation of how the Coast Guard Provisions might lead to a denial of coverage. HCC argues that the letter was sufficient.

On November 30, 2007, Captain Barrois signed an "acknowledgment letter" in which he acknowledged receipt of the November 8, 2007 letter.[24] Supreme initiated the Limitation Action this same day. On March 5, 2008, after taking the deposition of Captain Barrois in connection with the Limitation Action, HCC issued further reservation of rights

---

[21] R. Doc. 81, Ex. 3.

[22] R. Doc. 81, Ex. 4.

[23] R. Doc. 81, Ex. 5.

[24] R. Doc. 181, Ex. 20.

5

correspondence to Captain Barrois.[25] This correspondence does not specifically reference the Coast Guard Provisions.

HCC issued additional reservation of rights correspondence to Supreme on September 29, 2010, two months after Judge Zainey's opinion in the Limitation Action.[26] In this letter, HCC specifically reserved its right to deny coverage under the Coast Guard Provisions. Stone contends that this is the first time HCC issued an effective and timely reservation of rights.

On October 21, 2011, the parties participated in mediation of the remaining claims in the Limitation Action and in this Declaratory Judgment action. The terms of the resulting mediation agreement included the settlement of all of Stone's claims against Supreme in the Limitation Action. In the mediation agreement, Supreme dropping its appeal of Judge Zainey's ruling. In exchange, Stone and HCC reached a "high-low" agreement, in which HCC agreed to pay a certain amount of money to Stone (as real party in interest for Supreme) if it is determined that HCC does not owe coverage, and another more substantial amount of money to Stone if it is determined that HCC does owe coverage.[27] At the insistence of Stone, the terms of the agreement reached at mediation were more fully fleshed out in an Assignment of Claim to Insurance Proceeds, entered into by Supreme and Stone, and consented to by HCC, on May 3, 2012 (the "Assignment Agreement"), in which Stone, Supreme, and HCC attempted to clarify which party had the

---

[25] R. Doc. 81, Ex. 7.

[26] R. Doc. 81, Ex. 9.

[27] R. Doc. 212, Ex. G.

right to argue what, and on behalf of whom.[28]

## ARGUMENTS OF THE PARTIES

Now before the Court are cross motions for summary judgment filed by HCC and Stone.[29] HCC argues that the Coast Guard Provisions are grounds for denying coverage. HCC would have this Court focus only on the language of the policy, Judge Zainey's opinion that Supreme's failure to comply with Coast Guard Regulations was the proximate cause of the allision, and Louisiana rules for construction and interpretation of marine insurance policies such as the one at issue.[30] HCC also argues, as a threshold matter, that, when Supreme assigned Stone its rights against HCC, Stone stepped into the shoes of Supreme, and because Supreme has no right to argue waiver and estoppel, Stone also has no right to make those arguments.[31]

Stone argues that the Coast Guard Provisions are not grounds for denying coverage because they are not "exclusions" or "warranties," but instead a "representation" not found in the typical marine insurance policy, and that, even if the provisions are warranties/exclusionary provisions, HCC waived its right to deny coverage based on those provisions by failing to issue a timely and effective reservation of rights and by acting in a

---

[28] *Id.*, Ex. H.

[29] *See* R. Doc. 81 (HCC's First Motion for Summary Judgment); R. Doc. 173 (HCC's Second Motion for Summary Judgment); R. Doc. 181 (Stone's Motion for Summary Judgment). The Court heard oral argument on these three motions on August 23, 2012. *See* R. Doc. 220.

[30] HCC's First Summary Motion for Summary Judgment focuses on the issue of the Coast Guard Provisions. R. Doc. 81. HCC's First Motion was filed in October 2011, but was "adjourned" to allow for settlement discussions between the parties. R. Doc. 120. HCC's First Motion was later re-set for submission. R. Doc. 196.

[31] HCC's Second Motion for Summary Judgment focuses on the issue of the Assignment. R. Doc. 173.

manner inconsistent with an insurance company planning on denying coverage. Stone also argues that, even if the Coast Guard Provisions were valid warranties/exclusionary provisions, and even if HCC did issue a valid reservation of rights after the allision, HCC still should be estopped from denying coverage because of the manner in which HCC handled the claim.

## ANALYSIS

### I. Summary Judgment Standard

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 ; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The initial burden of demonstrating the absence of any genuine issues of material fact lies with the party seeking summary judgment. *Celotex*, 477 U.S. at 324. If the moving party fails to carry this burden, the motion must be denied. However, if the moving party successfully carries this burden, the burden then shifts to the non-moving party that a genuine issue of material fact exists. *Id.* at 322-23.

Once the burden has shifted, the non-moving party must direct the Court's attention to something in the pleadings or other evidence in the record that sets forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist. *Id.* at 324. The non-moving party cannot simply rely on allegations or blanket denials of the moving party's pleadings as a means of establishing a genuine issue of material fact, but instead must identify specific facts that establish a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could

affect the outcome of the action." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 150-51 (2000). All reasonable inferences are drawn in favor of the nonmoving party. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

## II.     HCC's First Motion for Summary Judgment

The parties do not disagree about the wording of the Coast Guard Provisions at the time of the allision. However, they vehemently disagree about the legal effect of those provisions in this case. HCC's first motion for summary judgment contends that the Court need only look to the Coast Guard Provisions, and Judge Zainey's finding that the allision was proximately caused by Supreme's violation of certain Coast Guard regulations, to find that HCC is entitled to deny coverage as a matter of law. HCC argues that the Coast Guard Provisions clearly are "warranties" or "exclusions" because they were fundamental to HCC's assessment of the risks insured. Thus, according to HCC, they are automatic grounds to deny coverage under *Graham v. Milky Way Barge, Inc.*, 824 F.2d 376 (5th Cir. 1987)). Stone argues that the provisions are "representations," and are not valid grounds for denying coverage unless the insurer shows intent to deceive under *Chambers v. Joshua Marine, Inc.*, 430 F. Supp. 2d 580 (E.D. La. 2006). Stone further argues that the policy

9

provisions are ambiguous and, therefore, must be interpreted in light of the intent of the parties to the contract.

It is undisputed that Louisiana law governs in this case. In Louisiana, the question of whether a policy is clear or ambiguous is a question of law. *Cadwallader v. Allstate Ins. Co.*, 02–1637, p. 4 (La.6/27/03), 848 So.2d 577, 580. Under Louisiana law, "[a]n insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written." *Smith v. Matthews*, 611 So.2d 1477 (La. 1993) (citing *Cent. La. Elec. Co. v. Westinghouse*, 579 So.2d 981 (La. 1991)). Indeed, "[i]nterpretation of a contract is the determination of the common intent of the parties." LA. CIV. CODE ANN. art. 2045. "However, any ambiguous provisions in an insurance contract must be construed in favor of coverage to the insured and against the insurer who issued the policy." *Smith*, 611 So.2d at 1477 (citing *Breland v. Schilling*, 550 So.2d 609 (La. 1989). While insurers "are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume," *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 p. 5 (La. 1/14/94), 630 So.2d 759, 763, "any exclusion from coverage in an insurance policy must be clear and unmistakable." *Duncan v. U.S.A.A. Ins. Co.*, No. 06-363, p. 5 (La. 11/29/06); 950 So.2d 544, 547 (internal citations omitted). "An insurer has the burden of proving that a loss falls within a policy exclusion." *Sensebee v. Canal Indem. Co.*, No. 09-1325 (La. App. 1 Cir. 2/24/10); 35 So.3d 1122, 1125 (citing *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250, 1252 (La.1993)).

Summary judgment is not appropriate with respect to the issue of insurance coverage in this case. HCC has not met its burden of proving that, as a matter of law, the Coast Guard Provisions are warranties/exclusionary provisions giving rise to an automatic right to deny coverage.

The question of whether a provision is a warranty or a condition is also a question of law for the court to decide. *Milky Way Barge*, 824 F.2d at 381. Louisiana law is far from clear, however, as to when an insurance provision is characterized as a warranty, an exclusion, a representation, or otherwise. Most coverage cases deal with whether Louisiana's anti-technical statutes apply and whether the insured must prove a causal connection and/or intent to deceive on the part of the insured, and, for that matter, the cases are not very consistent on these issues either. *Compare Benton Casing Service, Inc. v. Avemco Ins. Co.*, 379 So.2d 225, 231 (La. 1979) *with Chambers*, 430 F. Supp. 2d at 585.[28]

The facts of the *Milky Way Barge* case are easily distinguishable from the facts now before the Court. In *Milky Way Barge*, coverage was limited to inland waters limited to 40 feet of water for elevating purposes, and the vessel was neither to elevate in seas of over five feet nor remain elevated when seas exceeded five feet. 824 F.2d at 379. These are navigational or operational limits placed in a policy that more clearly limit coverage than those at issue in this case. There was no doubt that the insured in *Milky Way Barge* understood the provision as exclusionary. In fact, the insured in the *Milky Way Barge* case actually requested an extension of coverage beyond the navigational limits in the policy, thereby demonstrating an understanding that coverage was not provided otherwise. *Id.* at

---

[28] The Court has not yet determined whether Louisiana's anti-technical statutes apply in this case.

380. Based on the clear provisions of the policy and the reasonable intention of the parties, the court treated these provisions as exclusionary. *Id.* at 383-84.

In this case, the Court does not find the Coast Guard Provisions in the HCC policy to be clear exclusionary provisions. Instead, the Court finds the Coast Guard Provisions to be ambiguous.[29] *See Bonin v. Westport Ins. Corp.*, No. 05-886, p. 6 (La. 5/17/06); 930 So.2d 906, 911; *see also Tex. E. Transmission Corp. v. Amerada Hess*, 145 F.3d 737, 741 (5th Cir. 1998). Ambiguity in the terms of a contract gives rise to a fact question concerning the intent of the parties. *Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co., Inc.*, 89 F.3d 243, 246 (5th Cir. 1996).

The intent of the parties in this case with respect to the interpretation of the Coast Guard Provisions is not clear at this point. The parties cannot agree whether HCC intended for the Coast Guard Provisions to be warranties or exclusions, or whether Captain Barrois and Supreme understood them to be as such. Because facts material to the issue of the parties' intent are still in dispute, summary judgment is inappropriate. Accordingly, HCC's first motion for summary judgment is denied.

### III. Stone's Motion for Summary Judgment

Stone seeks a summary judgment that there is coverage under the policy. Stone argues that the Coast Guard Provisions are ambiguous or unenforceable because they lead to absurd results, and that, as a result, it is entitled to summary judgment that these provisions are unenforceable. Stone further seeks summary judgment that the provisions

---

[29] While the Court has determined that the issue is not ripe for summary judgment, the Court has not reached a conclusion on the legal question of whether the Provisions are "warranties," "exclusions," "representations," or something else, or any conclusion as to what the classification of the Provisions will mean for the ultimate issues in this case.

are representations, as opposed to warranties, and that, as such, intent to deceive on the part of the insured must be proved. Stone has also raised arguments that, even if the Coast Guard Provisions give rise to a right to deny coverage, HCC waived that right by not issuing a timely and effective reservation of that right and by voluntarily assuming Supreme's defense. Stone also argues that HCC's conduct throughout the course of this litigation is such that HCC should now be equitably estopped from using the Coast Guard Provisions as grounds to deny coverage. The factual disputes in this matter preclude summary judgment for Stone on any of these issues. Stone listed sixty-six uncontested material facts in its Motion for Summary Judgment.[30] Many of these were denied by HCC, in full or in part or as written.[31] It is clear to the Court that many factual disputes remain with respect to the issues involved in Stone's motion for summary judgment and, as a result, summary judgment in favor of Stone is not appropriate.

### IV. Houston Casualty's Second Motion for Summary Judgment

In HCC's second motion for summary judgment, HCC seeks summary judgment dismissing the defenses asserted by Stone of waiver and estoppel previously pled by Supreme, and which Stone contends were assigned to it by Supreme. HCC argues that, because Stone stepped into the shoes of Supreme as a result of the Assignment Agreement, the only arguments available to Stone are those that Supreme had at the time of the assignment, which do not include the waiver and estoppel theories set forth by Stone in its motion for summary judgment. HCC argues that, at the time of the assignment, Supreme could not argue waiver or estoppel because it no longer had that right following the October

---

[30] R. Doc. 181-2.

[31] R. Doc. 215-1.

21, 2011 mediation agreement. Because HCC settled all claims by Stone against Supreme on October 21, 2011, HCC asserts that Supreme was not prejudiced by anything that HCC is alleged to have done or not done, and, as a result, Supreme can no longer claim waiver and estoppel and neither can Stone.

HCC believes that there are no material facts in dispute with respect to this summary judgment motion because the only relevant facts are that HCC provided a reservation of rights to Supreme and ultimately obtained a complete settlement in favor of Supreme that protects Supreme against any monetary harm from claims arising out of the allision. HCC argues that any waiver or estoppel claims allegedly possessed by Supreme at any point no longer exist after the October 21, 2011 settlement because Supreme was thereby protected from harm and prejudice. HCC agrees that Stone stands in the shoes of Supreme as a result of the Assignment Agreement but believes that Supreme had no right to argue waiver and estoppel that could be assigned to Stone. Because it believes there are no material facts in dispute, HCC believes it is entitled to a judgment of dismissal of the defenses of waiver and estoppel asserted by Stone. HCC claims that because Supreme agreed to give up its appeal in the Limitation Action and HCC agreed to cover Supreme for any monetary harm arising out of the allision, Supreme cannot show prejudice, and thus that Stone, as assignee of Supreme's rights under the policy, cannot show prejudice.

Stone disputes the truth and/or completeness of some of the undisputed facts listed by HCC. Stone argues that HCC did not issue an effective reservation of its rights in 2007 and disputes that Supreme ever acknowledged the sufficiency of any reservation of rights. Stone disputes that monetary harm has not and will not continue to occur as to Supreme because of its increased insurance premiums, attorney fees, health of its employees, and

reputation. Stone argues that Supreme was prejudiced and suffered damage and that its right to make these arguments was not obviated by the settlement agreement. Because Supreme had the right to argue waiver and estoppel, Stone argues that it was assigned these rights in the Assignment Agreement.

It is true that under Louisiana law, the assignment of rights under an insurance contract is permitted, but the assignee "acquires only those rights possessed by its assignor at the time of assignment." *Pontchartrain Gardens, Inc. v. State Farm Gen. Ins. Co.*, No. 07-7965, 2009 WL 86671, at *3 (quoting *Del-Remy Corp. v. Lafayette Ins. Co.,* 616 So.2d 231, 233 (La. App. 5 Cir. 1993)). The real issue in this case, however, at least with respect to HCC's Second Motion for Summary Judgment, is whether or not Supreme suffered prejudice and, as a result, had a right to argue waiver and estoppel it then assigned to Stone. With respect to Stone's estoppel argument, the parties disagree about whether Supreme relied to its detriment on the actions of HCC and suffered prejudice as a result, and also whether Supreme had the right to argue equitable estoppel at the time of the Assignment Agreement. Furthermore, the Court finds that the Assignment Agreement also is ambiguous because issues exist with respect to the interpretation of that agreement, notedly whether all parties intended Stone would have the right to argue waiver and estoppel. Testimony with respect to the intent of the parties, and their reasonable expectations as to the interpretation of the Assignment Agreement, is relevant to these issues. Without the testimony of the parties, it is impossible for the Court to find that either party is entitled to judgment as a matter of law based on the language of the Assignment Agreement. HCC's second motion for summary judgment is denied.

## V. HCC's Motion to Strike

On September 5, 2012, Stone filed a Pretrial Memorandum "Regarding Standing Issues" with this Court.[1] In this document, Stone addresses many of the arguments raised by HCC's second motion for summary judgment. On September 7, 2012, HCC moved to strike Stone's pretrial memorandum,[2] arguing that it was essentially a supplemental memorandum in opposition to HCC's second motion for summary judgment. On September 10, 2012, Stone filed an opposition to HCC's motion to strike.[3]

HCC's second motion for summary judgment is denied, and thus any arguments in Stone's pretrial memorandum that are directed at HCC's motion are moot. Accordingly, HCC's motion to strike is denied. HCC's motion for expedited consideration of its motion to strike is dismissed as moot.

## CONCLUSION

Summary judgment is only appropriate when, even construing all facts and drawing all inferences in favor of the non-moving party, there are no disputed issues of material fact and no reasonable trier of fact could find for the non-moving party after considering the applicable law. At this stage in the proceedings, the parties cannot agree on sixty-one issues of fact they deem material to the legal issues at hand. These disputed facts relate to a whole range of outstanding legal issues, from the issue of interpretation of the insurance policy to the issues of waiver, prejudice, and estoppel. With many issues of material fact still in

---

[1] R. Doc. 239.

[2] R. Doc. 240. HCC also seeks expedited review of its motion to strike. *See* R. Doc. 241.

[3] R. Doc. 242.

dispute, and the legal rights of the parties unclear, it is impossible for the Court to grant summary judgment in favor of either party.

Accordingly, **IT IS ORDERED** that HCC's First and Second Motions for Summary Judgment be and hereby are **DENIED.**

**IT IS FURTHER ORDERED** that Stone's Motion for Summary Judgment be and hereby is **DENIED.**

**IT IS FURTHER ORDERED** that HCC's Motion to Strike be and hereby is **DENIED.**

**IT IS FURTHER ORDERED** that HCC's Motion for Expedited Hearing on its Motion to Strike be and hereby is **DISMISSED AS MOOT.**

**New Orleans, Louisiana, this 16th day of September, 2012.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**